**BERK v. TAMIAMI INVESTMENT CO. et al.**
**No. 6012.**

Circuit Court of Appeals, Third Circuit.
June 30, 1936.

Leonard K. Guiler, of Pittsburgh, Pa., for appellant.

Mahlon E. Lewis, G. K. Wright, and Alter, Wright & Barron, all of Pittsburgh, Pa., for appellees.

Before BUFFINGTON, Circuit Judge, and DICKINSON and FORMAN, District Judges.

DICKINSON, District Judge.

This case is the outgrowth of the great variance which is almost periodically experienced in the selling prices of real estate. The case is typical. Expressed in terms of the mortgaging value of this real estate it was worth in June, 1925, approximately $20 per acre; in July, 1925, approximately $140; in August, 1925, $170; in November, 1933, $22; and in December, 1933, less than $7. To this counsel for the mortgagee adds the naive and interesting statement that the mortgagee has since sold the mortgaged premises for $2 per acre, and that in truth it has no value. Bargaining over such a variable is the wildest form of gambling. The whole history of the so-called Florida boom is incredible.

The plaintiff has fared fairly well. The mortgage in question is a purchase-money mortgage. What the mortgagee received on the sale of the property we do not know. Part or the whole of the selling price was represented by a mortgage for about $117,000. There was then a prior mortgage of about $22,000. Now that the day of payment has arrived, the plaintiff retains whatever was paid over and above the purchase-money mortgage; it received the benefit of the payment of something more than $22,000 in a first mortgage which was against its property when conveyed; it received about $97,000 on account of the $117,000 second mortgage; it has received back all the property it conveyed, and is now asking about $27,000 more from the defendant. This means that in addition to whatever hand money was received it has already received $120,000 for the property and has back all the property with which it parted and is asking for $27,000 more. The result to the defendant as the boomtime purchaser of this property is not quite so satisfactory. In addition to the hand money paid, if any, when he purchased the property, he has since paid in mortgages against the property other than that of the plaintiff about $50,000,

and on the plaintiff's mortgage $97,000 more, making, with what is now claimed, $174,000. This is rather a high price to pay for the mere privilege of holding title to the property for a short time. A circumstance which adds to his complaint is that in the foreclosure proceeding the property was sold at the price of $25,000. The property was sold to the attorney for the plaintiff, and might be found to have been sold to the plaintiff. If the purchaser had not defaulted, no claim could have been pressed against the defendant. It would certainly be regrettable if the plaintiff profited by its own default. On this recital the case for the plaintiff would not be an appealing one. Nonetheless the function of courts is to do not justice, but legal justice, and the plaintiff must be protected in all its legal and equitable rights. Let us see what they are and appraise them.

There is resort to the laws of any one of three states, Florida, the place of the situs; Ohio, the place of the contract; and Pennsylvania, the state of its enforcement. It would not seem to make much difference by the laws of which state the rights of the plaintiff or the obligation of the defendant are adjudged. The defendant here made express agreement to pay. The obligation is not that of one who takes conveyance of real estate which is subject to incumbrances; nor of a grantee who takes title under and subject to named incumbrances; nor of any one who may relieve himself of a continuing liability by parting with the title. The contract is, as we have said, express. This much may be conceded the plaintiff. An action at law was originally brought on the covenant to pay. To this a statutory demurrer was interposed, raising the question of whether the statement of claim disclosed a cause of action. Judgment was entered for the defendant. On appeal to this court the judgment was affirmed on the ground that resort must be first had to the mortgaged land; the liability of the defendant being limited in the nature of a deficiency judgment. Tamiami Inv. Co. v. Berk (C. C.A.) 57 F.(2d) 1034.

Thereafter, the mortgage was foreclosed, and following this a bill in equity was filed, resulting in a decree in favor of the plaintiff from which this appeal has been taken. No defense was in-

terposed in the trial court on the ground that the judgment rendered in the action at law was res adjudicata. This was doubtless because the judgment rendered was really entered upon a plea in abatement that the action was premature. The question of liability to a deficiency judgment under the Florida law (Comp.Gen. Laws Supp.Fla.1934, § 5751) would seem to be one to be determined in its discretion by the court in which the foreclosure proceedings were had, with the right in the mortgagee to sue at law.

It is here that we have experienced quite a little difficulty in following the proceedings. This court in effect denied to the mortgagee the right to enforce the personal obligation of a grantee of the property until after the mortgaged premises had been first exhausted.

Counsel for the mortgagee is justified in his statement that the mortgagee was complying with the ruling of this court in conducting its foreclosure proceeding in the Florida court; applying the proceeds of the foreclosure sale on the mortgage debt and instituting the proceedings now under review against the defendant for the unpaid part of that debt. Counsel agree that the Florida statute confers upon the foreclosure court the power to enter a deficiency judgment, if so disposed, or not to do so. In the latter case, the plaintiff may resort to its action, but if it becomes the purchaser of the mortgaged premises at the foreclosure sale it must give the mortgagor credit for the value. The trial court treated these proceedings as brought upon a deficiency judgment of the Florida court, and held the defendant to be concluded by the judgment rendered. In its seventh finding of facts, it finds that the Florida court entered a deficiency judgment for the sum now claimed.

We have carefully examined the record in the foreclosure suit and fail to find that any such judgment was rendered. The finding made is inconsistent with finding 2.

The proceedings were strictly limited to one in rem. It may be that the court entered no deficiency judgment because the defendants were served only by publication. The court, it is true, did find how much of the mortgage remained unpaid, and this may have been construed as a deficiency judgment. The judgment, however, is strictly limited to one of foreclosure of the equity of redemption. There were other defendants than the plaintiff named. The only connection we have been able to trace one of them had with the mortgaged property is that he at one time had been himself a mortgagee. The other is named as a grantee. Why in view of this Berk was named in the foreclosure suit does not appear. Whether the Florida court entered a deficiency judgment or not it is clear that the claim of the mortgagee is based not on such judgment, but on the contract of the defendant in the bill.

We find no evidence in the case which supports the part of fact finding 2 to which we have referred, and nothing on which to base conclusion of law IV. The truth seems to be that there are two conveyances on which a finding of the assumption by Berk of the mortgage in suit might possibly be based. One is the conveyance to him which states that he had assumed such payment. This, however, is not his statement, but that of the Towne Company. The other is his promise in the mortgage he gave to the Towne Company. It will be observed that this promise was made to the Towne Company and for its benefit. It was not made to the Tamiami Company. The bill carefully avoids any reference to the promise of Berk. The mortgage in which the promise appears is ignored. The claim is based on the promise imputed to him in the deed of the Towne Company. The mortgage which carries the promise of the defendant has been paid and satisfied. It is clear the Towne Company is not concerned with the imputed promise. The plaintiff, however, has linked a claim of the Towne Company with its own. Indeed, it is suing as a claimed assignee of the Towne Company. If, therefore, the Towne Company cannot recover the plaintiff cannot. Surely the Towne Company would have no right to judgment. The court has made no finding on the subject of who was the $25,000 purchaser of the property. Counsel for the mortgagee admits it was the second or $7,-500 purchaser. The first purchaser was its attorney. This would have charged his title with a trust in the client's favor until he paid and the client accepted the money bid. The only explanation vouchsafed is the statement by counsel that the first sale was a "mistake," whatever this may mean. The fact that the first purchase was by counsel for the mort-

gagee, if unexplained, justified the fact finding that the mortgagee was the purchaser. The fact finding of the trial court in the last clause of finding 7 is inconsistent with finding 2, and is without evidence to support it, and conclusion of law IV goes with it.

Decree reversed, and the record is remanded for due procedure by the court in accordance with this opinion.